UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSAF ARKIN, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 25-cv-04869-SI <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND SCHEDULING INITIAL CASE MANAGEMENT CONFERENCE FOR JANUARY 16, 2026 AT 2:30 P.M.** <br><br> Re: Dkt. No. 12 |

On December 19, 2025, the Court held a hearing on defendant's motion to dismiss the complaint for lack of subject matter jurisdiction. For the reasons set forth below, the Court DENIES the motion. The Court schedules an initial case management conference for January 16, 2026 at 2:30 p.m. via zoom.

**BACKGROUND**

Plaintiffs Assaf Arkin and Jennifer Hong are married, and they have filed this lawsuit against the United States seeking to recover for injuries Arkin sustained after being hit by a car during a high-speed vehicle pursuit initiated by Federal Protective Service ("FPS") Inspector Charles Clemons. Plaintiffs bring this lawsuit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), and 2671 *et seq.*

The following facts are alleged in the complaint. On or about 5:30 p.m. on May 4, 2023, Inspector Clemons was on-duty and in uniform when he departed the Ronald V. Dellums Federal Building located at 1301 Clay Street in Oakland, California, and drove in a marked FPS vehicle towards the Coast Guard Base in Alameda. Compl. ¶ 14. At around 5:35 p.m., Inspector Clemons

was stopped at a red light at the intersection of Embarcadero and Brooklyn Basin Way, which is in Oakland approximately 2.4 miles from the Dellums Federal Building, and not on or adjacent to any federal property. *Id.* ¶ 15. Inspector Clemons saw a 2004 Acura run a red light through the intersection, and he activated his emergency lights and siren and "initiated a high-speed, high-risk vehicle pursuit of the Acura." *Id.* ¶¶ 16-17. "Inspector Clemons initiated the pursuit on the sole basis of his suspicion that the driver of the Acura, Anton Allen Jackson, Jr., committed violations of state and local traffic laws" and at all relevant times, "Inspector Clemons did not suspect that the Acura and/or Anton Allen Jackson, Jr. were involved in the commission of any crime relating to federal property or persons, any felony, or any crime of violence." *Id.* ¶¶ 18-19.

"Prior to and during the pursuit, Inspector Clemons failed to communicate or coordinate with anyone, and did not request or obtain authorization to conduct the pursuit from anyone, including but not limited to his supervisor, FPS dispatch, the FPS Denver MegaCenter, 911 dispatch, or local law enforcement." *Id.* ¶ 21. Inspector Clemons pursued the Acura through densely populated areas of Oakland, reaching speeds of over 100 miles an hour in a 30 mile/hour zone. *Id.* ¶ 24. Inspector Clemons pursued the Acura through two intersections, where he observed the Acura nearly collide with other vehicles in the intersections, but he did not end the pursuit or communicate with anyone. *Id.* ¶¶ 25-26.

Inspector Clemons continued the pursuit northbound on 23rd Avenue in Oakland at a high rate of speed. At around 5:38 p.m., Inspector Clemons reached the intersection of 23rd Avenue and East 11th Street, and the Acura and Inspector Clemons' patrol vehicle proceeded straight through the intersection against a red stop signal. *Id.* ¶ 27. At the same intersection, a Nissan was turning left on a green turn arrow signal, and the front of the Nissan collided with the rear driver side of the Acura, causing the Acura to rotate counterclockwise toward the northeast side of the intersection. *Id.* ¶ 28. The Acura rotated across the sidewalk on 23rd Avenue, striking Arkin, who was walking on the sidewalk, and throwing him into the air and onto a patch of grass on the eastern side of 23rd Avenue. *Id.* ¶¶ 29-30. After the collision, Inspector Clemons stopped his FPS patrol vehicle and contacted FPS dispatch for the first time, requesting backup "only after the 2.1 mile vehicle pursuit had already concluded." *Id* ¶ 32. Inspector Clemons "apprehended the driver of the Acura after a

2

short foot chase, failing to notice that Mr. Arkin was lying critically injured on the ground." *Id.* ¶ 33. Arkin sustained life-threatening injuries in the collision, including but not limited to a severe traumatic brain injury, diffuse axonal injury, subdural hematomas, subarachnoid hemorrhage, multiple spinal fractures, humerus fractures, tibia/fibula fractures, and additional internal injuries. *Id.* ¶ 31.

After this incident, "[a]n internal investigation by FPS concluded that Inspector Clemons violated multiple legal and/or regulatory mandates governing vehicle pursuits, and that Inspector Clemons exceeded the scope of his authority in initiating, continuing, and failing to terminate the pursuit." *Id.* ¶ 4. The investigation also "revealed systemic failures within FPS Region 9, including prior unaddressed misconduct by Inspector Clemons and his colleagues." *Id.* Plaintiff alleges that the United States is liable for the negligent and reckless conduct of Inspector Clemons acting within the scope of his employment, as well as for the failure to adequately supervise and discipline personnel known to act beyond their legal authority. The complaint alleges claims for negligence and negligent supervision and training on behalf of Arkin, and loss of consortium on behalf of Arkin's wife, Jennifer Hong.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual."). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no

3

presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation and internal brackets omitted).

**DISCUSSION**

"The United States has sovereign immunity and cannot be sued without its consent." *Lam v. United States*, 979 F.3d 665, 671 (9th Cir. 2020). "One important immunity waiver that allows suits against the federal government is the FTCA." *Id*. at 671-72. "The FTCA provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). "Under the FTCA, the United States may be held civilly liable for the torts of its employees 'in the same manner and to the same extent as a private individual under like circumstances.'" *Id*. (quoting 28 U.S.C. § 2674). "To succeed in district court under the FTCA, a plaintiff must have suffered an injury, a federal employee must have caused that injury, and state law must offer a legal theory that makes that employee's negligence actionable." *Lam*, 979 F.3d at 672. "However, the FTCA's waiver of immunity is limited by a number of statutory exceptions." *Id.* (citing 28 U.S.C. § 2680). If plaintiffs' causes of action fall within one of these exceptions, this Court lacks subject matter jurisdiction. *Id*.

The United States contends that plaintiffs' claims fall within the discretionary function exception to the FTCA. That exception bars "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has set forth a two-part test to determine if the discretionary exception applies. *See United States v. Gaubert*, 499 U.S. 315, 328-32 (1991). First,

4

the court must evaluate whether the challenged conduct "involve[s] an element of judgment or choice." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id*. "The basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id*. at 536-57 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Id*. at 537.

The complaint alleges that Inspector Clemons violated numerous legal and/or regulatory mandates related to vehicle pursuits. Compl. ¶¶ 4, 38-39. Paragraph 39 of the complaint identifies eight specific laws and policies, including two FPS Directives and a Memorandum of Understanding between the Oakland Police Department and FPS, and those laws and policies are attached to the declaration of Kelsey Helland, submitted with defendant's motion to dismiss. Dkt. No. 12-1. The parties' briefing focuses primarily on five of these laws and policies: (1) 40 U.S.C. § 1315; (2) FPS Directive 15.1.2.1; (3) FPS Directive 15.5.13.1; (4) MOU Between FPS and OPD; and (5) OPD Special Order 9212. Plaintiffs assert that Section 1315 and the other policies and mandates provide that FPS officers are authorized to protect federal property and people on federal property and that they lack the authority or discretion to enforce state or local laws on state property without a federal nexus.

The government contends that FPS officers do have the authority to enforce state or local laws on state property pursuant to various exceptions set forth in these documents, including when necessary to protect the public. The government cites several cases for the proposition that "decisions regarding whether and how to conduct a law enforcement pursuit, and how to supervise and train employees, require federal employees to make a variety of choices that implicate considerations of public safety, law enforcement priorities, agency resources, and a wide range of other policy concerns." Reply at 1.

As discussed at the hearing, the Court concludes that the question of whether the

1   discretionary function exception applies is better decided upon a full factual record.  The Court
2   reaches this conclusion mindful that "the United States bears the burden of proving the applicability
3   of one of the exceptions to the FTCA's general waiver of immunity," *Prescott v. United States*, 973
4   F.2d 696, 701-02 (9th Cir. 1992), and that the FTCA "should be construed liberally, and its
5   exceptions should be read narrowly" in order to "effectuate Congress's intent to compensate
6   individuals" tortiously harmed by the government.  *O'Toole v. United States*, 295 F.3d 1029, 1037
7   (9th Cir. 2002).  To conclude that the discretionary function exception applies at this early stage of
8   the litigation, the Court would be required to find, *inter alia*, that Inspector Clemons did not violate
9   any legal or regulatory mandates, notwithstanding plaintiffs' allegations that he did.

10   The Court also notes that a number of the cases cited by the government were decided on summary judgment.  *See Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000) (affirming summary judgment holding negligent supervision and retention claim was barred by discretionary function exception where "we have no indication on the record that the INS violated any mandatory policy"); *Herrera v. United States*, No. 09-cv-0756-JM, 2010 WL 4236974, at *3-6 (S.D. Cal. Oct. 21, 2010) (granting summary judgment to government in case involving a high speed chase by U.S. Customs and Border Patrol agent after "extensive discovery"); *see also Nurse*, 226 F.3d at 1002 (reversing dismissal of claim that agency established policies resulting in unlawful arrests, detentions and searches because although such claims "typically" protected by discretionary function exception, "governmental conduct cannot be discretionary if it violates a legal mandate" and plaintiffs were entitled to conduct discovery to determine if agency had violated a legal mandate).  In addition, none of the cases cited by the government, including those resolved on a motion to dismiss, involved a vehicle pursuit by an FPS officer, nor did any of the cases analyze 40 U.S.C. § 1315, the two FPS Directives, or the other policies and mandates that plaintiffs allege that Inspector Clemons violated.  Plaintiffs have requested the opportunity to conduct discovery clarifying the meaning, scope and application of the regulations, directives and interagency agreements at issue, and the Court finds it appropriate for those matters to be developed prior to resolving the immunity question.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendant's motion to dismiss, without prejudice to the government renewing its arguments about the applicability of the discretionary function exception on summary judgment.  **The Court will hold an initial case management conference on January 16, 2026 at 2:30 p.m. via zoom, and the parties shall file a joint case management conference no later than January 9, 2026.**

**IT IS SO ORDERED**.

Dated: December 22, 2025

SUSAN ILLSTON
United States District Judge